## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIAN E. PARKER, individually and on behalf of all others similarly situated | CIVIL ACTION NO. 2:08-CV-01508 |
| Plaintiff | ELECTRONICALLY FILED |
| v. | |
| NUTRISYSTEM, INC., | |
| Defendant. | |

## DEFENDANT NUTRISYSTEM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO <u>PROCEED AS A COLLECTIVE ACTION</u>

Sarah E. Bouchard (PA I.D. 77088)
Jonathan S. Krause (PA I.D. 93817)
Katherine E. Kenny (PA I.D. 206993)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5077/5510/5256
Fax: (215) 963-5001

Attorneys for Defendant
NutriSystem, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ....................................................................... 3

STATEMENT OF RELEVANT FACTS ........................................................................ 5

    A.    NutriSystem's Business Operations and Recognition ........................................ 5

    B.    NutriSystem's Sales Associates Duties and Reporting Structure ...................... 5

        1.    Introduction and General Responsibilities .............................................. 5

        2.    Sales Associates' Reporting and Shift Structure ..................................... 6

        3.    NutriSystem Evaluates Sales Associates Based On Their Efficiency, Not Their Hours Worked ..................................................... 7

        4.    Sales Associates' Opportunities to Work More than 40 Hours Per Week Vary Depending Upon When in the Proposed Class Period They Were Employed, Their Shift, and Their Performance .................... 7

    C.    Sales Associates' Compensation ....................................................................... 8

        1.    NutriSystem's Sales Associates are paid the greater of their hourly wage or eligible commissions ................................................................. 8

        2.    NutriSystem has in place various Commission Plans ............................ 10

        3.    NutriSystem also has in place Incentive Programs to reward Sales Associates ............................................................................................. 10

    D.    Plaintiff's Employment With NutriSystem and Termination for Fraud ............. 10

    E.    The Majority of Opt-Ins Are Former Employees Who Were Terminated For Cause ....................................................................................................... 12

ARGUMENT ............................................................................................................... 12

I.    CONDITIONAL CERTIFICATION IS UNWARRANTED BECAUSE 7(I) PERMITS EMPLOYEES TO BE COMPENSATED BY COMMISSIONS AND ANY ANALYSIS OF THE EXEMPTION IS HIGHLY INDIVIDUALIZED ............. 12

II.    PLAINTIFF MUST MAKE A FACTUAL SHOWING OF THE PROPOSED CLASS BEING SIMILARLY-SITUATED, RATHER THAN JUST RELYING ON HIS UNSUBSTANTIATED ALLEGATIONS AND CONCLUSORY DECLARATIONS ................................................................................................ 14

    A.    The Legal Standard ......................................................................................... 14

    B.    Policy Considerations and the Action's Current Procedural Posture Favor Requiring Plaintiff to Provide a Factual Showing Prior to Certification ........... 16

C.    Plaintiff's Past Fraudulent Conduct During His Employment And Continued Untruths Require The Court To View His Allegations Skeptically ................................................................................... 17

D.    Plaintiff's Inconsistent Theories In This Litigation Requires The Court to View His Allegations In A Skeptical Light ...................................... 19

III.    PLAINTIFF'S "EVIDENCE" CONSISTS OF LITTLE MORE THAN CONCLUSORY ALLEGATIONS AND UNSUBSTANTIATED DECLARATIONS, WHICH DOES NOT SATISFY HIS BURDEN ........................... 20

IV.    PLAINTIFF IS NOT SIMILARLY-SITUATED TO OTHER CLASS MEMBERS .................................................................................................. 22

V.    EVEN IF THE COURT WERE TO GRANT PLAINTIFF'S MOTION, IN WHOLE OR IN PART, PLAINTIFF'S PROPOSED FORM OF NOTICE MUST BE MODIFIED ........................................................................................ 24

VI.    CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

Barfield v. N.Y. City Health and Hosps. Corp., No. 05 Civ 6319,
2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ................................................................. 20

Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433 (E.D. Va. 2002) ...................................... 20

Bond v. Nat'l City Bank of Pa., No. 05CV0681,
2006 WL1744474 (W.D. Pa. June 22, 2006) ................................................................12, 13

Bosley v. Chubb Corp., Civ. A. No. 04-4598,
2005 WL 1334565 (E.D. Pa. Jun. 3, 2005) ...................................................................15, 16

Bowman v. Builder's Cabinet Supply Co., No. 04-201-DLB,
2006 WL 2460817 (E.D. Ky. Aug. 23, 2006) .......................................................... 4

Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516 (D. Md. 2000)...................................... 14

D'Anna v. M/A-COM, Inc., 903 F. Supp. 889 (D. Md. 1995).................................................... 17

Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272 (M.D. Ala. 2004).................... 15

Diaz v. Elecs. Boutique of Am., Inc., No. 04-cv-0840E (SR),
2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...............................................................13, 22

Duffy v. Sodexho, Inc., No. 05-5428, 2006 WL 3025958 (E.D. Pa. Oct. 20, 2006)..............16, 17

Dybach v. Florida Dep't of Corr., 942 F.2d 1562 (11th Cir. 1991)............................................ 15

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003)...........................15, 17

Gieg v. DRR, Inc., 407 F.3d 1038 (9th Cir. 2005)...................................................................... 13

H&R Block, Ltd. v. Housden, 186 F.R.D. 399 (E.D. Tex. 1999)................................................ 20

Haynes v. Singer Co., 696 F.2d 884 (11th Cir. 1983)................................................................ 20

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)....................................................14, 16

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) .................................................. 15

Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265 (M.D. Ala. 2004)................................................ 17

Huntley v. Bonner's, Inc., No. C02-1004L,
2004 WL 24133000 (W.D. Wash. Aug. 14, 2003)................................................................ 4

Johnson v. TGF Precision Haircutters, Inc., No. Civ. A. H-03-3641,
2005 WL 1994286 (S.D. Tex. Aug. 17, 2005)...............................................................13, 14

<u>Justiniano-Revollo v. Shorty's IV, Inc.</u>, No. 03-23077 (S.D. Fla. Mar. 17, 2004)...................... 23

<u>Klinedinst v. Swift Invs., Inc.</u>, 260 F.3d 1251 (11th Cir. 2001) .................................. 13

<u>Libront v. Columbus McKinnon Corp.</u>, 1984 U.S. Dist. LEXIS 21259
    (W.D.N.Y. Dec. 13, 1984) ................................................................................... 25

<u>McElmurry v. U.S. Bank Nat'l Ass'n.</u>, No. CV-04-642-HU,
    2004 WL 1675925 (D. Or. July 27, 2004) ........................................................... 13

<u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128 (1988)........................................... 24

<u>Schwind v. EW  & Assocs., Inc.</u>, 371 F. Supp. 2d 560 (S.D.N.Y. 2005) ................... 12

<u>Severtson v. Phillips Beverage Co.</u>, 137 F.R.D. 264 (D. Minn. 1991) ....................... 17

<u>Smith v. Sovereign Bancorp, Inc.</u>, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) ...............16, 17

<u>Stillman v. Staples, Inc.</u>, No. 07-849 (KSH),
    2008 WL 1843998 (D.N.J. April 22, 2008) ......................................................... 25

<u>Wajcman v. Hartman & Tyner, Inc.</u>, No. 07-61472-CIV, 2008 WL 203579............................. 25

**STATUTES**

29 C.F.R. § 779.400-.421........................................................................................ 12

29 C.F.R. § 790.21(b)(2) ......................................................................................... 24

29 U.S.C. § 207(i) ............................................................................................. 4, 12

29 U.S.C. § 216(b)................................................................................................. 14

29 U.S.C. § 255 ..................................................................................................... 24

29 U.S.C. § 256 ..................................................................................................... 24

# INTRODUCTION

Plaintiff's personal bias against Defendant NutriSystem, Inc. ("NutriSystem") is palpable, and has infected his ability to serve as a named Plaintiff in this suit. Offering nothing more than unsubstantiated allegations, uninformative documents, and inadequate declarations, Plaintiff Adrian E. Parker ("Plaintiff" or "Mr. Parker") moves this Court to expand radically the scope of this litigation. Notably, NutriSystem's generous commission-based compensation system allowed Plaintiff to earn approximately **three** times more than his highest income from any other employer. However, after Plaintiff was terminated for fraud, Plaintiff went to an attorney, and now alleges that NutriSystem violated the Fair Labor Standards Act ("FLSA"). In particular, Plaintiff alleges that NutriSystem did not compensate him based on the hours he worked, including when he worked over forty hours in a given workweek. In so doing, he is asking this Court to issue notice to a proposed class of hundreds of current and former Sales Associates. Plaintiff claims to be qualified to represent this collective group, despite admitting that he has *no interest* in the compensation of current Sales Associates and that he conducted *no investigation* into whether other Sales Associates would be interested in this litigation.

The Court should deny Plaintiff's Motion for an abundance of reasons. The FLSA requires some factual showing of an unlawful plan, which Plaintiff has failed to provide. Instead, Plaintiff baldly alleges that he was not paid additional compensation for overtime. NutriSystem has explained to Plaintiff's counsel that he was compensated lawfully under the retail services exemption, which permits an employer to pay its employees only commissions regardless of the hours worked. Plaintiff, however, has provided no factual explanation for why this compensation was unlawful. Additionally, the retail services exemption is by its very nature a highly individualized inquiry because, unlike other exemptions, it is not based on the duties performed but on the wages earned by each individual. As a result, courts have correctly

determined that the retail services exemption is an exemption that is not suitable for collective treatment.

Plaintiff also significantly understates his burden of proof in moving for conditional certification. Plaintiff claims that the Court only need to rely upon his unverified Amended Complaint and declarations. Plaintiff has no choice but to underplay his burden for conditional certification because, even though the standard only requires a "modest" factual showing at this stage, his "evidence" still is little more than an unverified Amended Complaint and stock declarations clearly drafted by his attorney.[1] This is the sum of his evidence, upon which he asks the Court to certify a collective action on behalf of hundreds of Sales Associates, which would consume significant judicial resources to manage and cost the parties a great sum to litigate.

Of course, Plaintiff's "evidence" is so slim because he is not similarly-situated to the proposed class. In a Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") after his termination, Plaintiff raised serious allegations that NutriSystem treated younger and Caucasian employees more favorably than both older and African-American employees. In pursuing a discrimination claim and simultaneously alleging that all Sales Associates were similarly-situated for purposes of this Motion, Plaintiff wants to have his cake and eat it too: according to him, all Sales Associates were treated the same when it is convenient for his FLSA claim, but NutriSystem's supervisors also gave Caucasian Sales Associates preferential treatment which, in turn, negatively affected African-Americans' performance. Despite his apparent wishes, Sales Associates cannot only be similarly-situated when it suits his agenda.

---

[1] The only other "evidence" in support of expanding this litigation are a general position description and page from NutriSystem's Form 10-K, both of which vaguely describe the duties of a Sales Associate; his own paystubs, which have nothing to do with other Sales Associates; and a memorandum issued by NutriSystem after his employment was terminated, which generally discusses the terms of only one current compensation plan.

Plaintiff is also not similarly-situated because Sales Associates' eligibility to work additional hours differed depending upon: 1) when NutriSystem employed them in the proposed Class Period; 2) the shift they worked; and 3) their efficiency in selling NutriSystem product. Moreover, different groups of Sales Associates are eligible to receive different commissions.

For the following reasons, Plaintiff respectfully requests that the Court deny Plaintiff's Motion to Proceed as a Collective Action and Facilitate Notice ("Plaintiff's Motion").

## RELEVANT PROCEDURAL HISTORY

On March 28, 2008, Plaintiff filed a Complaint purportedly on behalf of current and former Sales Associates, alleging that NutriSystem violated the FLSA by failing to pay overtime compensation. See Comp. ¶¶ 1, 43-48, at Ex. 1. In the Complaint, Plaintiff repeatedly alleged NutriSystem compensated him pursuant to a commission plan and that being paid commissions violated the FLSA. See id. ¶¶ 19-33 (emphasis added).

On April 23, 2008, counsel for the Parties conducted the Rule 26 Conference. Prior to the Rule 26 Conference, Plaintiff's counsel e-mailed NutriSystem a proposed Notice Form and requested that NutriSystem consent to conditional certification and the proposed Notice. (See April 21, 2008 E-mail, at Ex. 2). Consistent with the allegations in the Complaint, the proposed Notice described the lawsuit as follows:

> This lawsuit alleges that Sales Associates…failed to receive overtime compensation…and that Defendant did not include the commissions earned by Sales Associates for the purpose of calculating overtime pursuant to the FLSA. The lawsuit alleges that Defendant failed to take commissions into account in calculating a "regular rate" of pay…

Plaintiff's Proposed Notice, p. 1, at Ex. 3 (emphasis added).

At the Rule 26 Conference, NutriSystem requested that the Parties' take limited discovery prior to moving for conditional certification to investigate the merits of Plaintiff's

claims. Plaintiff denied the request. At the Conference, Plaintiff learned that NutriSystem intended to assert as a defense in this action the retail services exemption ("7(i)") of the FLSA, which permits a commission-based compensation scheme. See 29 U.S.C. § 207(i). On April 24, 2008, NutriSystem served Document Requests and a Deposition Notice for June 6, 2008. On June 2, 2008, after his responses were already untimely, Plaintiff requested – and NutriSystem granted – an extension until June 6, 2008 to respond to the Discovery Requests. See June 2, 2008 E-mail, at Ex. 4. Plaintiff also requested that NutriSystem postpone his deposition.

On May 28, 2008 – the date his document responses would have been due absent the belatedly-sought extension – Plaintiff filed an Amended Complaint that radically recast his description of NutriSystem's compensation plan and added a state-law class claim under the Pennsylvania Minimum Wage Act. Based on NutriSystem's stated defense at the Rule 26 Conference, Plaintiff revised his description of NutriSystem's compensation system from commissions to "piece-work."[2] See Am. Compl., at Ex. 5, ¶38; compare with Compl. ¶¶ 29-33. Plaintiff did not raise new allegations regarding how he was compensated, but only altered his previous characterization of the payments to circumvent 7(i)'s requirements and avoid dismissal.

On June 11, 2008, Plaintiff filed his Motion. In response, NutriSystem again requested a brief extension to conduct limited discovery so that the Court could rely upon a developed record. Plaintiff once again denied NutriSystem's request. On June 17, 2008, NutriSystem filed a Motion to Extend its response time to Plaintiff's Motion to conduct limited discovery, which the Court granted in part. As a result, NutriSystem took Plaintiff's deposition on July 22 and July 24, 2008.

---

[2]   The significance of this change is that compensation pursuant to a bona fide commission plan is one of the requirements for an employee to be exempt under 7(i), whereas employers who compensate for piece-work (as opposed to commissions) are not exempt from the overtime requirements of the FLSA. See Huntley v. Bonner's, Inc., No. C02-1004L, 2004 WL 24133000, at *3 (W.D. Wash. Aug. 14, 2003); Bowman v. Builder's Cabinet Supply Co., No. 04-201-DLB, 2006 WL 2460817, at *8 (E.D. Ky. Aug. 23, 2006).

## STATEMENT OF RELEVANT FACTS

### A.   NutriSystem's Business Operations and Recognition

NutriSystem, based in Horsham, Pennsylvania, is a leading marketer and provider of a weight management system based on a portion-controlled, prepared meal programs. (NutriSystem Form 10-K, 2/29/2008, at p. 3, at Ex. 6). NutriSystem sells a variety of monthly food programs to its customers, who are individuals and families, for their direct use. Declaration of Robert Smedley, ¶ 4, at Ex. 7.

NutriSystem has been repeatedly recognized as an industry leader in trade and general publications. Forbes Magazine ranked NutriSystem #1 in its list of America's 200 Best Small Companies in 2006 and #2 in the same list for 2007. Also in 2007, Staffing Magazine recognized NutriSystem's Human Resources Department as the Greater Delaware Valley's number one HR Department. In addition, in 2006 Forbes named NutriSystem's CEO as Entrepreneur of the Year. (Id., ¶ 3).

### B.   NutriSystem's Sales Associates Duties and Reporting Structure

#### 1.   Introduction and General Responsibilities

NutriSystem relies upon its 154 Sales Associates[3] located in its Horsham call center to sell its programs to current and potential customers. (Id., ¶ 5). A Sales Associate's primary duty is to sell NutriSystem's programs to individuals. (Id., ¶ 7). Sales Associates accomplish this responsibility either by receiving incoming telephone calls from potential customers dialing the Company's 1-800 number or by initiating out-bound sales calls to leads and targeted potential customers. (Id.).

---

[3]   Sales Associates are on occasion referred to as "Sales Representatives" or "Sales Agents" in NutriSystem's literature. The majority of Sales Associates during the proposed Class Period are full-time employees. However, of note, NutriSystem also employed part-time Sales Associates until December 2005. Unlike full-time Sales Associates, part-time Sales Associates were never eligible to work overtime. (Id., ¶ 6).

When on a sales call, Sales Associates are expected to use their persuasive skills and intimate knowledge of NutriSystem's programs to persuade the potential customer to make a sale.  (Id., ¶ 8).  Although Sales Associates are provided with a basic call script and are trained on NutriSystem's business, Sales Associates have considerable discretion in deciding the best approach for convincing the individual to purchase NutriSystem product and must adopt their sales technique in response to the customer.  (Id.; Dep. of Adrian E. Parker, 59:14-24, 60:21-23, excerpts of which are attached at Ex. 8).  That said, NutriSystem specifically instructs Sales Associates that they cannot make any false representations or offers for which the customer is ineligible.  (Id.).

## 2.    Sales Associates' Reporting and Shift Structure

Sales Associates are assigned to eight and one-half hour shifts.  Currently, these shifts are:  1) 7:00 a.m. to 3:30 p.m.; 2) 9 a.m. to 5:30 p.m.; 3) 11:00 a.m. to 7:30 p.m.; 4) 1:30 p.m. to 10 p.m.; 5) 3:30 p.m. to 11:00 p.m.; and 6) 11:00 p.m. to 7:30 a.m. (the "overnight shift").  (Id., ¶ 9).  For each shift, Sales Associates are supervised by one or two supervisors, depending upon shift.  (Id.).  The supervisor motivates, evaluates and counsels Sales Associates.

Different shifts and days worked are more or less desirable from a commission-earning perspective.  Sales Associates prefer to work the overnight shift because they receive higher commissions due to the diminished call volume and are permitted to work hours in excess of their scheduled shift regardless of their performance.  (Id., at ¶ 10).  Similarly, Sales Associates prefer to work on a Monday rather than a weekend because the high call volume on Monday generally provides them with greater opportunities to earn commissions.  (Id.).

### 3. NutriSystem Evaluates Sales Associates Based On Their Efficiency, Not Their Hours Worked

NutriSystem evaluates its Sales Associates on their efficiency. Primarily, NutriSystem evaluates Sales Associates based on their Sales Dollars Per Call ("SDPC").[4] (Id., ¶ 12). SDPC measures the conversion of sales calls taken to actual sales made. (Id.). NutriSystem calculates a Sales Associate's SDPC by taking the total inbound sales revenue generated by a Sales Associate and then dividing by the number of inbound calls taken. (Id., ¶¶ 12-13). Therefore, a Sales Associate does not need to work a lot of hours to be considered productive; rather, he or she needs be adept at converting calls into sales. (Id.).

This evaluation system gives eligible Sales Associates the discretion to choose whether they want to work more than forty hours per week because they will not be reviewed unfavorably if they work efficiently for only forty hours. (Id., ¶ 15). Beyond the opportunity to earn additional commissions through having more time to receive more calls, NutriSystem's evaluation system does not incent overtime because Sales Associates are not judged on their hours worked. (Id.). To the contrary, this evaluation and compensation system rewards efficiency because effective Sales Associates can earn more in forty hours than a less effective Sales Associate can earn in sixty hours.

### 4. Sales Associates' Opportunities to Work More than 40 Hours Per Week Vary Depending Upon When in the Proposed Class Period They Were Employed, Their Shift, and Their Performance

Although NutriSystem does not have a policy requiring or encouraging excess hours, eligible Sales Associates are permitted to work in excess of forty hours per week. (Id., ¶ 16). Prior to January 2007, upon approval, Sales Associates on all shifts could work as many hours beyond their shift as they desired. (Id., ¶ 17). The supervisor would approve requests for

additional hours based on the volume of incoming phone calls and the Sales Associate's performance.  (Id.).

After January 2007, Sales Associates on most shifts could only work additional hours if their SDPC exceeded the Sales Department's average for the preceding week.  (Id., ¶ 18).  NutriSystem instituted this policy as another motivation for Sales Associates to work efficiently. (Id.).  However, Sales Associates who worked the overnight shift were permitted to work unlimited hours, regardless of their SDPC, out of consideration of the decreased volume of calls processed during the overnight hours.[5]  (Id., ¶ 19).

Contrary to Plaintiff's allegations, many Sales Associates – including himself and the fifteen opt-ins – did not work more than forty hours on a regular basis.  (Id., ¶ 20).  In fact, Plaintiff, despite his contentions that he rarely worked under fifty hours per week, in fact worked forty hours or more irregularly during the time he was employed by NutriSystem.  See Hours Chart and Supporting Declaration, at Ex. 9.  As set forth in the Hours Chart, Plaintiff's experience was not atypical in that the opt-ins did not regularly or even frequently work more than their scheduled shift.  (See id.).  This can be explained by:  1) NutriSystem staffing the sales force to have an appropriate number of Sales Associates per shift; and 2) Sales Associates not feeling the need or pressure to work overtime to financially succeed.  Smedley Decl., ¶ 20.

### C.     Sales Associates' Compensation

#### 1.     NutriSystem's Sales Associates are paid the greater of their hourly wage or eligible commissions.

NutriSystem has in place a generous compensation system for its Sales Associates that rewards the majority of Sales Associates based on performance, rather than hours worked.

---

[4]    NutriSystem also evaluates it Sales Associates according to the percentage of time they are actually handling calls (as opposed to taking breaks), attendance, and compliance with NutriSystem's regulations, but the SDPC is the Company's primary measure for evaluation.  (Id., ¶ 14).

NutriSystem pays its Sales Associates the greater of their regular and overtime hourly earnings for a bi-weekly pay period or the total value of the eligible commissions in a bi-weekly pay period. (Id., ¶ 21). This means, at a minimum, Sales Associates earn $10.00 an hour plus $15.00 an hour for all hours worked over forty hours in a given workweek. (Id.). However, Sales Associates also are eligible to receive commissions for their sale of NutriSystem products. (Id.). At the end of the pay period, NutriSystem calculates whether a Sales Associate would receive higher pay based on: 1) their hourly rate (factoring in any premium rate for hours over 40); or 2) their eligible commissions.[6] (Id., ¶¶ 21-22). If the Sales Associate's commissions exceed his hourly rate, the Sales Associate is paid on a commission basis. (Id., ¶ 21). If the Sales Associate's hourly earnings exceed his commissions, than he is paid an hourly rate. (Id.). The majority of Sales Associates are compensated by commission. (Id.).

Prior to this litigation, NutriSystem had not received any complaints from former or current Sales Associates that the Company's compensation system was unfair, most likely because most Sales Associates thrive in the Company's environment and earn significant commissions. (Id., ¶ 23). For example, the highest paid Sales Associate in the past three years earned around $115,000 in one year. (Id., ¶ 24). Even Plaintiff earned anywhere from $68,000

---

[5]   This policy remained in place until March 2008, when NutriSystem limited the total hours a Sales Associate on the overnight shift could work at one time to twelve hours. (Id., ¶ 19).

[6]   For example, assume that a Sales Associate works 45 hours the first week of the pay period and 42 hours the second weeks. The Sales Associate's total hourly earning for the pay period would be $905 (80 hours x $10.00 plus 7 hours x $15.00 = $905). During the same pay period, the Sales Associate completes sufficient sales to be eligible to receive $1,035 in commissions. In this example, NutriSystem would pay the Sales Associate $1,035 because the eligible commissions exceeded the hourly rate. However, if the Sales Associate made fewer sales and was only eligible to receive less than $905 in commissions, NutriSystem would pay the Sales Associate $905 based on the hourly earnings.

In calculating whether Sales Associates would earn more on an hourly wage or on commission, NutriSystem's supervisors review and track the hours the Sales Associate is at work. (Id., ¶ 22). Although NutriSystem's method for tracking hours has changed during the course of the proposed Class Period, the hours tracked have consistently captured the hours from when the Sales Associate arrived at the call center building to when the Sales Associate left for the day. (Id.).

to $75,000 per year, approximately three times more than he earned at his last regular job. (Pl.

Dep. 52:16-18, 176:22-177:1, 254:7-20; Parker 2007 W-2, at Ex. 10).

**2.     NutriSystem has in place various Commission Plans.**

NutriSystem has compensated the majority of its Sales Associates on a commission-basis

since March 2005.  (Smedley Decl., ¶ 25).  Since March 2005, there have been at least twelve

plans in effect at various times.  These plans are:  1) standard inbound call orders from 7:00 a.m.

to 6:00 p.m.; 2) standard inbound call orders from 6:00 p.m. to 12:00 a.m.; 3) standard inbound

call orders for the overnight shift; 4) standard outbound call orders based on lead/inactive sales

lists; 5) bad funds/denied credit card orders; 6) priority processing; 7) zero water; 8)

overstock/clearance; 9) overstock/clearance blowout; 10) one and two week orders; 11) the

Canadian team commission plan; and 12) flex funds.  (Id.).

**3.     NutriSystem also has in place Incentive Programs to reward Sales
Associates.**

NutriSystem also has in place several incentive programs to reward Sales Associates who

perform well according to a series of metrics.  (Id., ¶ 26).  These metrics include recognizing

leaders in:  1) SDPC; 2) total revenue generated; 3) sales from outgoing calls to leads; and 4)

priority processing orders.  (Id.).  As with NutriSystem's evaluation system, the incentive

programs do not reward Sales Associates based on hours worked.  In addition to cash payments,

these incentive programs provide recipients with prizes in the forms of gift cards, electronic

merchandise, computers, and vacations.  (Id.).  In total, NutriSystem gave approximately

$750,000 in incentives in 2007.  (Id.).

**D.     Plaintiff's Employment With NutriSystem and Termination for Fraud**

NutriSystem hired Plaintiff on November 21, 2005 as a Sales Associate.  See Parker Hire

EAN, at Ex. 11.  Plaintiff's scheduled shift was 3:30 p.m. to 12:00 a.m. for the duration of his

employment. Id.; Pl. Dep. 158:8-160:13. NutriSystem always paid Plaintiff pursuant to his commissions, as opposed to his hours worked because he always earned more in commissions than the hourly rate plus premium pay. See Pl. Dep. 111:3-8. Plaintiff admits that he was not paid under all of NutriSystem's commission plans and is not aware if he was eligible for all of the commission plans. Id. 142:15-145:22, 147:4-150:22.

NutriSystem terminated Plaintiff's employment on February 22, 2008 for fraud because he entered fictitious profiles of non-existent customers. See Parker Termination EAN, at Ex. 12; see Unemployment Referee's Decision/Order, at Ex. 13. Specifically, Plaintiff had a telephone conversation with a customer who wished to enter an order to receive several months product at once, which generally is not permitted under NutriSystem's policies. See Pl. Dep., 270:3-277:3. After speaking to this customer, Plaintiff proceeded to enter an order for the customer, but also entered orders for two non-existent customers so that the customer received three months of product in one instance. See Parker Screen Shots, at Ex. 14. By creating profiles and orders for non-existent customers, Plaintiff: 1) received commissions to which he was not entitled; and 2) caused the customer to receive discounts for which he would otherwise be ineligible.

After Plaintiff's termination, he filed a Charge of Discrimination with the EEOC alleging discrimination on account of his race and his age. See Charge, at Ex. 15. Plaintiff alleged NutriSystem: 1) twice denied him a promotion because of his race and age; 2) terminated his employment because of his race and age; 3) and created a hostile work environment for African-Americans by tolerating racist comments and excluding African-American Sales Associates from informal Company events. Id.

### E. The Majority of Opt-Ins Are Former Employees Who Were Terminated For Cause

Of the four hundred Sales Associates Plaintiff seeks to represent, only fifteen have joined this action. Unsurprisingly, given Sales Associates' high compensation and general satisfaction with their NutriSystem experience, nine of the opt-ins are former employees and <u>eight</u> of the <u>nine</u> former employees were terminated involuntarily for poor performance, poor attendance, misconduct, or job abandonment. Smedley Decl., ¶ 27.

### <u>ARGUMENT</u>

### I. CONDITIONAL CERTIFICATION IS UNWARRANTED BECAUSE 7(I) PERMITS EMPLOYEES TO BE COMPENSATED BY COMMISSIONS AND ANY ANALYSIS OF THE EXEMPTION IS HIGHLY INDIVIDUALIZED.

To proceed with a collective action, Plaintiff must, as an initial matter, identify an unlawful plan or policy that deprived Sales Associates of overtime. <u>See, e.g.</u>, <u>Bond v. Nat'l City Bank of Pa.</u>, No. 05CV0681, 2006 WL1744474, at *4 (W.D. Pa. June 22, 2006) (affirming denial of motion for conditional class certification where plaintiffs had not shown that they were together victims of an unlawful policy). Simply stating that Sales Associates were not paid overtime at one and one half time their regular rate is insufficient because, as Plaintiff's counsel is aware, the FLSA provides lawful exemptions, such as 7(i), to compensating employees solely on an hourly basis. Plaintiff has failed to introduce any evidence to demonstrate that NutriSystem did not satisfy the three elements of the "retail services" exemption: 1) it is a retail or service establishment; 2) it pays Sales Associates a regular rate in excess of one and one-half times the federal minimum wage for all hours they work in a workweek in which NutriSystem claims the exemption; and 3) Sales Associates receive more than half of their compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services. 29 U.S.C. § 207(i); 29 C.F.R. § 779.400-.421; <u>see</u> <u>also</u> <u>Schwind v. EW</u>

& Assocs., Inc., 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005); Klinedinst v. Swift Invs., Inc., 260

F.3d 1251, 1254 (11th Cir. 2001).  Because Plaintiff has not pointed to an *unlawful* policy to

deprive Sales Associates of overtime, he cannot maintain a collective action.

Courts have also recognized that the individualized nature of the 7(i) exemption

precludes class certification.  Unlike other exemptions under the FLSA, 7(i) is not based on the

duties of the employee, but rather, solely on the pay received by an employee and the status of

the employer as a retail or service establishment.  See Gieg v. DRR, Inc., 407 F.3d 1038, 1047

(9th Cir. 2005); see also Johnson v. TGF Precision Haircutters, Inc., No. Civ. A. H-03-3641,

2005 WL 1994286, at * 6 (S.D. Tex. Aug. 17, 2005) ("7(i) is in fact a highly individualized

defense because its application requires week-by-week and other periodic calculations").  When

individualized factual determinations predominate, as is the case here, courts have routinely

found class members are not "similarly situated."  See e.g., Diaz v. Elecs. Boutique of Am., Inc.,

No. 04-cv-0840E (SR), 2005 WL 2654270, at *4-5 (W.D.N.Y. Oct. 17, 2005); Bond, 2006 WL

1744474, at *4 (W.D. Pa. June 22, 2006) (denying preliminary certification where claims

asserted by named plaintiffs would require a fact-intensive, individualized inquiry).[7]

Here, individualized inquiries regarding the second and third prongs of the retail services

exemption precludes collective certification.  The Court would have to examine if (and the

parties would have to produce individualized evidence regarding):  1) each Sales Associates'

commission payments exceeded the federal minimum wage for all hours worked for each

workweek; and 2) each Sales Associate received more than half of his or her compensation in the

---

[7]     See also Tyler v. Payless Shoe Source, Inc., 2:05-cv-33F (WO), 2005 WL 3133763, at *17 (M.D. Ala. Nov. 23,
2005) (rejecting collective certification; explaining that "[t]he parties in this case have presented sufficient
evidence at this stage to demonstrate that a determination as to whether or not potential plaintiffs are similarly
situated would require a fact-specific case-by-case inquiry by the Court"); McElmurry v. U.S. Bank Nat'l
Ass'n., No. CV-04-642-HU, 2004 WL 1675925, at *16 (D. Or. July 27, 2004) (considering national policy that
allegedly violated FLSA, Magistrate recommended notice be denied as plaintiffs were not similarly situated and
an "individual employee-by-employee, time sheet-by-time sheet" analysis would be required).

form of commissions.  This inquiry requires the review of <u>each</u> Sales Associates' payroll and time records to determine if the exemption applies to <u>each</u> class member.[8]  Plaintiff cannot rely upon a representative sample, as the exemption could apply to some, but not other, Sales Associates based on their hours worked and commissions earned.  For that reason, if the Court were to certify this case as a collective action, the parties would essentially be litigating hundreds of individual lawsuits under the guise of one case caption.  <u>See Johnson</u>, 2005 WL 1994286, at * 6 ("The proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, would amount to trials of perhaps as many of 200 individual cases.").  As a result of the individual inquiries necessary to determine whether an individual is exempt under the FLSA, courts have held that such claims simply cannot be litigated as a collective action.  <u>See id</u> at *6-7 (decertifying collective action based on 7(i) exemption; finding that 7(i) defense weighs heavily in favor of decertification).

## II. PLAINTIFF MUST MAKE A FACTUAL SHOWING OF THE PROPOSED CLASS BEING SIMILARLY-SITUATED, RATHER THAN JUST RELYING ON HIS UNSUBSTANTIATED ALLEGATIONS AND CONCLUSORY DECLARATIONS.

### A. <u>The Legal Standard</u>

The Court has absolute discretionary power to deny the sending of notice to potential class members in a collective action under 29 U.S.C. § 216(b) where the evidence fails to demonstrate that members of the putative class are "similarly situated."  The United States Supreme Court has made clear that the Court's discretion to permit the sending of notice should be exercised only in "appropriate cases," where the plaintiff has met his burden.  <u>Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989); <u>Camper v. Home Quality Mgmt. Inc.</u>, 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the court has

---

[8] Furthermore, if the putative class members dispute the legitimacy of NutriSystem's time records, as appears to be the case, individualized discovery will have to be conducted to reconcile their evidence of hours worked with

discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion.").  The Court is vested with this discretion because it has the responsibility to avoid "the stirring up of litigation" through unwarranted solicitation in a collective FLSA action.  See Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003) (citation omitted).  At all times, Plaintiff bears the burden of demonstrating that this action is appropriate for collective treatment under Section 216(b) of the FLSA.  In other words, it is his burden to prove to this Court that the claims asserted in this case are proper for conditional certification.  Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

In determining whether to certify a collective action, courts sitting in the Third Circuit have previously indicated that the two-step approach to managing FLSA representative actions is appropriate.  See, e.g., Bosley v. Chubb Corp., Civ. A. No. 04-4598, 2005 WL 1334565, at *2 (E.D. Pa. Jun. 3, 2005).  At the first step, presented here, Plaintiff needs to satisfy two issues.  First, Plaintiff must demonstrate sufficient interest in his case to justify collective treatment.  Second, Plaintiff must proffer sufficient evidence that the purported claimants are similarly situated to justify resolving their claims on a collective, representative basis.  Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (citing Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991)).

As a threshold matter, Plaintiff simultaneously misrepresents and understates his burden in moving for conditional certification.  Plaintiff represents that "[d]uring the first stage (the notice state), the court determines whether notice should be given to potential class members, based typically on an examination of the pleadings and affidavits submitted by the parties." (Plaintiff's Memorandum, p. 13).  This is inaccurate.  Courts in the Third Circuit have increasingly required a plaintiff to offer factual support of certification, rather than mere

---

the Company's.  See Am. Compl., ¶ 55 ("Defendant failed to accurately record actual hours worked…").

allegations and conclusory declarations. See, e.g., Smith v. Sovereign Bancorp, Inc., 2003 WL 22701017, at **2-3 (E.D. Pa. Nov. 13, 2003); Duffy v. Sodexho, Inc., No. 05-5428, 2006 WL 3025958, at *3 (E.D. Pa. Oct. 20, 2006) (applying stricter standard and denying motion for provisional class certification and court supervised notice because basic factual support is required, particularly given commencement of discovery); Bosley, 2005 WL 1334565, at *3 (requiring the plaintiff make a "modest factual showing" to satisfy similarly-situated requirement). While the stricter standard for conditional certification only requires a "modest" factual showing, it requires more than allegations and conclusions.

**B.    Policy Considerations and the Action's Current Procedural Posture Favor Requiring Plaintiff to Provide a Factual Showing Prior to Certification**

There are strong policy considerations that favor the Court requiring Plaintiff to make a factual showing. Absent such a requirement, plaintiffs can generate costly, inefficient, and potentially frivolous collective actions that clog up the courts dockets just through the artful pleading of competent plaintiff's counsel. As the court in Smith noted:

> **In effect, [the 'mere allegation approach'] render[s] preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated."** Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. **This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery.** More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset." Hoffman La-Roche, 495 U.S. at 487 (discussing district court management of cases under § 216(b)), and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions. See id. at 488. As the Supreme Court has stated, the opt-in requirement was intended to reduce "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome." Id. **If district courts do not take basic steps to ensure that opt-in notices are sent only to potential plaintiffs who "have a personal interest" in the employer's challenged policy, the**

> **congressionally-mandated line between representative actions under FLSA and class actions under Rule 23 will be substantially blurred.**

Smith, 2003 WL 22701017, at *2 (emphasis added).

Smith's holding is even more applicable where, as here, discovery has commenced. The Court need not rely on allegations, as the parties have had an opportunity to explore certification issues. See, e.g., Smith, 2003 WL 22701017, at *2-3 (finding that to permit notice with less than a "basic factual showing" that the putative class members – including the named Plaintiff – are similarly situated is "at best, an inefficient and overbroad application of the opt-in system, and at worst, it places a substantial and expensive burden on a defendant"); Duffy, 2006 WL 3025958, at *3 (denying motion for provisional class certification and court supervised notice; finding that need for requiring some basic factual support is further justified where there has already been discovery to determine the scope of the class).[9]  In short, it would be perverse to reward Plaintiff for his decision not to serve discovery despite initiating this action over four months ago by holding him to the more lenient standard.

### C.    Plaintiff's Past Fraudulent Conduct During His Employment And Continued Untruths Require The Court To View His Allegations Skeptically

Plaintiff's prior fraudulent conduct and propensity for untruths further favor a stricter standard of scrutiny. Most significantly, as set forth at pp. 10-11, NutriSystem terminated Plaintiff for fraudulently entered fictitious profiles when processing sales at NutriSystem, thus inflating his commissions earned and calling into question the legitimacy of his recorded

---

[9]    See also Freeman, 256 F. Supp. 2d at 945 ("[i]t would be a waste of the [c]ourt's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated"); D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995) (denying without prejudice plaintiff's motion for collective action and authorizing plaintiff to re-file motion after conducting discovery); Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991) (noting that district court has a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation" and must ensure that "there is some factual basis for plaintiffs' claims" before sending notice); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (holding that the stricter standard of review applied where the court was "presented with fairly extensive evidence on the issue of whether putative class members are similarly situated").

commissions. Exacerbating Plaintiff's fraud are his continued deceptions in an attempt to

explain away his past conduct. When asked about the fraud at his deposition, Plaintiff claimed

that the fictitious profiles were generated at the suggestion of the customer during a second

telephone conversation and that he simply followed the customer's instructions. Pl. Dep. 267:9-

21; 270:3-277:16; 287:12-24. However, NutriSystem's records demonstrate that Plaintiff

processed the fictitious profiles before he had a second telephone call with the customer, thus

making his explanation implausible.[10] Thus, Plaintiff not only committed fraud while employed

by NutriSystem but has continued his dishonesty in an effort to mask his actions.

Although Plaintiff's fraudulent commissions should be sufficient for the Court to cast a

skeptical eye on his allegations, there are additional reasons to question Plaintiff's truthfulness,

including:

- Plaintiff admits concealing prior convictions for possession of a controlled substance and a gun charge on his Employment Application with NutriSystem, despite attesting in the application that the information provided was complete and accurate;[11]

- Plaintiff admits falsely stating in his sworn EEOC Charge that he received no monetary benefit for creating the fictitious profiles that resulted in his termination;[12]

- Plaintiff alleges that he regularly worked in excess of fifty hours per week when NutriSystem's electronic time records (records which Plaintiff admits he has no basis to dispute) document that he infrequently worked in excess of forty hours during his employment;[13]

- Plaintiff alleges in his EEOC Charge that NutriSystem discriminated against him on account of his race and age by not promoting him to Sales Supervisor the first time he applied for the position, but at his deposition Plaintiff admitted that the promoted Sales Associate was more qualified than him;[14]

---

[10] Compare Screen Shots, at Ex. 14 and NutriSystem Phone Log for Plaintiff's Phone Extension, at Ex. 16. These two exhibits demonstrate that, contrary to Plaintiff's representation, he entered the false profiles before he spoke to the customer for a second time. See Smedley Decl., ¶ 28.

[11] See Pl. Dep. 20:9-11, 23:19-22; Parker Employment Application, at Ex. 17.

[12] See EEOC Charge, ¶ 14; Pl. Dep. 263:4-24.

[13] See Pl. Dep. 207:4-15; Hours Chart.

[14] See EEOC Charge; Pl. Dep. 222:21-24.

- Plaintiff seeks to be the Class Representative for a class including current Sales Associates, despite admitting that "**what [NutriSystem does] with their current employees really is no concern of mine, since I'm no longer an employee there**," and not speaking with any current or former Sales Associates to determine if there was any interest in this litigation because "**[i]t didn't benefit me at all**."[15]

- Plaintiff admits that he never complained about his compensation or otherwise while employed by NutriSystem, was generally very satisfied with his pay, and only decided to pursue this litigation after meeting with an attorney to discuss the circumstances of his termination.[16]

Simply put, Plaintiff's history of fraud and rank opportunism seriously calls into doubt the Court's ability to accept his allegations without competent evidence.

### D. Plaintiff's Inconsistent Theories In This Litigation Requires The Court to View His Allegations In A Skeptical Light

Plaintiff's fast-and-loose characterization of his claims in this litigation further compels the Court to look beyond his unreliable allegations. As previously discussed, Plaintiff initially described his compensation as "commissions" and was even prepared to describe his compensation as a "commission" in his proposed notice to the class. It was only after NutriSystem's counsel notified him of the retail services exemption that Plaintiff changed his description to piece-rate, despite not changing the underlying description of how he was compensated. Similarly, Plaintiff's description of NutriSystem's overtime policies changed from alleging that "Sales Associates generally work a preset 40 hour work-week schedule" to "Sales Associates regularly work in excess of 40 hours per week." Compare Compl., ¶ 26 with Am. Compl., ¶ 34. Given Plaintiff's willingness to recast his allegations in anticipation of NutriSystem's defense (and absent learning any new additional information that would otherwise

---

[15] See Pl. Dep. 385:14-386:3; 412:2-4.
[16] See Pl. Dep. 221:10-222:15; 373:6-374:19.

explain his strategic changes), there is no guarantee that he will not once again alter the allegations that he presently asks the Court to rely upon if it becomes strategically convenient.[17]

## III. PLAINTIFF'S "EVIDENCE" CONSISTS OF LITTLE MORE THAN CONCLUSORY ALLEGATIONS AND UNSUBSTANTIATED DECLARATIONS, WHICH DOES NOT SATISFY HIS BURDEN

Plaintiff must make his showing with competent evidence and neither unsupported assertions nor conclusory allegations will suffice. See Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983) (affirming district court's denial of notice where "judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying certification where plaintiffs relied on "unsupported assertions" and "affidavits making conclusory allegations").[18] Plaintiff fails to meet even his modest burden of proof for the Court to certify the Class.

First, the allegations in Plaintiff's Amended Complaint are unsupported by independent evidence, and therefore, are nothing more than unsubstantiated assertions by Plaintiff's counsel. The Court should decline to accept the allegations in the Amended Complaint at face value for the reasons discussed in Sections II.C & D.

Second, the declarations submitted by Plaintiff fail to provide evidentiary support for his allegations and are wholly objectionable. As a threshold matter, the declarations of Plaintiff and four putative class members are literally identical, with the sole exception being the dates of

---

[17] Further calling into question Plaintiff's motivation in changing the characterization of his compensation is that Plaintiff admits: 1) he knew the distinction between a commission and a piece-rate throughout his employment with NutriSystem; 2) he never believed he was paid by commission; 3) he explained to his attorneys how he was compensated prior to filing his Complaint; and 4) he approved the Complaint prior to filing. See Pl. Dep. 61:20-63:15, 67:6-14, 68:19-69:13.

[18] See also Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary."); Barfield v. N.Y. City Health and Hosps. Corp., No. 05 Civ 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying motion for collective certification of hospital nurses and holding that "anecdotal hearsay" was insufficient to establish purported company-wide unlawful policy or plan).

employment. These typed declarations are clearly the work product of Plaintiff's counsel, rather than the declarants' descriptions. In addition, three of the five declarations – including Plaintiff's – are not even signed by the supposed declarant but rather has the declarant's electronic signature, further calling into doubt the validity of these declarations and whether Plaintiff and the opt-ins even reviewed them prior to filing. (See Plaintiff's Ex. Nos. 7, 9, 10). Perhaps most telling, at least one declarant, Rodney Epps, either did not review his declaration or knowingly provided false information because his declaration identifies him as a current NutriSystem employee, when in fact he has terminated on October 9, 2007 for job abandonment. See Epps EAN, at Ex. 18. Unsurprisingly, Mr. Epps' Declaration is one of the three that does not actually have a handwritten signature.

Putting aside questions about the origins of these identical declarations, their actual content provides little competent evidence to persuade the Court that they are similarly-situated. NutriSystem's attached chart sets forth in detail its objections to the declarations and their deficiencies. See Declaration Objection Chart, at Ex. 19. Generally, these declarations are unreliable because they: 1) lack foundation by failing to explain how the declarant knows the information he or she represents; 2) contain vague, speculative and conclusory statements[19] about the practices of all Sales Associates without providing the basis for the statement; and 3) fail to provide any temporal period for their allegations, despite three of the five declarants no longer being employed by NutriSystem. Accordingly, these declarations should be disregarded.

Plaintiff's remaining "evidence" is similarly unavailing, only consisting of: 1) a single page from NutriSystem's 2007 Form 10-K, which generally discusses its sales system (Ex. 3); 2) an online Sales Associate position description (Ex. 4); 3) Plaintiff's paystubs for several pay

---

[19] Among other deficiencies in this regard is Plaintiff's failure to define "regularly worked overtime" or make any factual showing that NutriSystem has a policy encouraging overtime.

periods (Ex. 5); and 4) a May 20, 2008 memorandum from NutriSystem's Executive Vice-President for Customer Management and Product Development setting forth one current commission plan (Ex. 6). Vague descriptions of a position are insufficient to establish that employees are similarly-situated, thus eliminating the relevance of Exs. 3 and 4. See Diaz, 2005 WL 2654270, at *4 (denying plaintiffs' motion for conditional certification and holding plaintiffs could not make the necessary modest showing that named plaintiff was similarly situated despite plaintiffs sharing the same job description). Plaintiff's paystubs (Ex. 5) say nothing as to whether he is similarly-situated because an individual analysis of payroll records is required under 7(i). This leaves Plaintiff to cite to a memorandum issued after he was terminated, which only generally discusses one current compensation system and is silent on past compensation. Even this memorandum acknowledges that there are other commission plans unidentified in the memo for which Sales Associates may be eligible. From this slender reed of evidence, Plaintiff asks the Court to certify a class.

## IV.  PLAINTIFF IS NOT SIMILARLY-SITUATED TO OTHER CLASS MEMBERS

Plaintiff not only has failed to offer evidence to meet his burden, he cannot offer such evidence because there are multiple reasons that prevent him from being similarly-situated.

First, some Sales Associates were paid on an hourly basis (and received premium payments for hours worked in excess of forty), but Plaintiff admits he was always paid on commission.[20]  Second, Plaintiff's FLSA claim presumes the eligibility of Sales Associates to work more than forty hours. However, extra hours were only available to certain Sales Associates and the criteria changed depending on date, shift, and employment status. For example, Sales Associates working the overnight shift, which Plaintiff never did, were permitted

---

[20]    Unless otherwise stated, NuriSystem refers the Court to its Statement of Facts for the applicable record citations for this section.

to work unlimited hours until March 2008, whereas, after January 2007, Sales Associates on other shifts could only work more than forty hours if they satisfied certain call efficiency benchmarks that were based on SDPC and not total hours worked. Third, NutriSystem has multiple commission plans during the proposed Class Period. Plaintiff admits that he never received commissions under several of the plans, has never heard of others, and does not know whether he would be eligible under all of the commission plans. Plaintiff cannot be similarly-situated to Sales Associates who were paid in part pursuant to other commission plans. Fourth, Plaintiff alleges that NutriSystem has a policy strongly encouraging Sales Associates to work overtime. See, e.g., Am. Compl., ¶ 34. NutriSystem has no such policy or practice. To the contrary, Plaintiff's time records demonstrate that he infrequently worked in excess of forty hours.

Lastly, Plaintiff's substantial allegations of continuous racial discrimination by NutriSystem undermine his claim of being similarly-situated to his proposed Class. Courts have held that where a plaintiff has a pending Charge of Discrimination against an employer, in which the plaintiff alleges being subjected to different conditions of employment than other employees, that plaintiff is not similarly situated. See, e.g., Justiniano-Revollo v. Shorty's IV, Inc., No. 03-23077, Order Denying Plaintiff's Motion To Allow Notification Of Potential Class Members, at 4 (S.D. Fla. Mar. 17, 2004) (declining to certify class in FLSA action because of plaintiff's EEOC charge alleging discrimination in terms and conditions of employment), at Ex. 20. As with the plaintiff in Shorty's IV, Plaintiff's Charge disqualifies him from being similarly-situated to other Sales Associates because his allegations suggest a pattern of being treated differently based on his race and age. See EEOC Charge; see also Pl. Dep. 229:6-9, 223:15-224:9.

Significantly, Plaintiff alleges that the environment at NutriSystem was "highly hostile towards African Americans" and that Caucasian supervisors favored Caucasian Sales Associates.

Id. at 3; see also Pl. Dep. 249:20-250:3; 255:8-17; 257:12-21.  According to Plaintiff, African American Sales Associates, including Plaintiff, were regularly subjected to racial slurs and that management was aware of the practice but did nothing to stop it.  Id.; see also Pl. Dep. 249:20-252:15.  This is the same management that set schedules, determined overtime policy, and resolved disputes in commission tracking.  Now, Plaintiff claims that he was treated similarly by the same management that allegedly discriminated against him, tolerated alleged racial epithets, and allegedly routinely excluded African Americans from informal company social events.  See id.; Pl. Dep. 257: 8-11.  Moreover, according to Plaintiff, the hostile environment purportedly affected the performance of other African American Sales Associates.  See Pl. Dep. 255:14-256:20.  Plaintiff's discrimination claims are a textbook example of an employee alleging that one group (here, African Americans) was treated differently than another group in their employment conditions.  Therefore, Plaintiff cannot be similarly situated with the Class he seeks to represent.

## V.    EVEN IF THE COURT WERE TO GRANT PLAINTIFF'S MOTION, IN WHOLE OR IN PART, PLAINTIFF'S PROPOSED FORM OF NOTICE MUST BE MODIFIED

As set forth below, even if the Court permits Notice to potential members of the collective action, Plaintiff's proposed Notice cannot be used because it is:  (1) temporally overbroad; (2) likely to confuse recipients and substantially prejudice NutriSystem; and (3) inaccurate and does not convey judicial neutrality:

- The Notice should be limited to the two years limitations period proscribed by the FLSA, absent a showing of a "willful violation" by NutriSystem.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988).  Here, Plaintiff makes no showing that NutriSystem's conduct was "willful."

- The limitations period should run for two years from the date that the Notice is issued, not the date the Amended Complaint was filed, because the limitations period is tolled only when the "consent to join" form is filed with the Court.  See 29 U.S.C. §§ 255, 256; 29 C.F.R. § 790.21(b)(2).

28

- The Notice should provide potential opt-ins with sixty days to respond from the date of mailing, as opposed to one-hundred and twenty, because the shorter length of time is appropriate where, as here, the Sales Associates are in one location. See Wajcman v. Hartman & Tyner, Inc., No. 07-61472-CIV, 2008 WL 203579, at *2 (S.D. Fla. Jan. 23, 2008 (applying sixty day deadline for potential opt-in plaintiffs to file their consent to join where all potential opt-ins worked in one location).

- The Notice should avoid the appearance it is being sent by or at the request of the Court. See Libront v. Columbus McKinnon Corp., 1984 U.S. Dist. LEXIS 21259, *4 (W.D.N.Y. Dec. 13, 1984). To avoid this appearance, the Notice should: 1) not be preceded by the name of the Court or the caption of this case (See, e.g., Wajcman, 2008 WL 203579, at *2); and 2) clarify that the Court expresses no opinion on the merits by removing confusing language that might suggest otherwise.

- The Notice should not reference Plaintiff's counsels' websites because these websites contain prejudicial statements regarding employers' payment of their workers and a reference to the websites can be construed as judicial approval of their substance.

- The Notice should be revised to notify putative class members that NutriSystem contests Plaintiff's claims and to provide the basis for NutriSystem's defense. See Stillman v. Staples, Inc., No. 07-849 (KSH), 2008 WL 1843998, at *5 (D.N.J. April 22, 2008) (modifying plaintiff's proposed notice to ensure that it was accurate and informative by including language that defendant contested plaintiff's claims).

- The Notice should notify putative class members of their responsibilities if they choose to opt in to the lawsuit, including alerting them that they may be required to provide documents, answer interrogatories, sit for a deposition or testify in Court. See id. (amending proposed notice to notify putative class members of obligations). The parties and the Court should not be burdened with filing and withdrawing consent forms, which could have been avoided if class members had full disclosure regarding their obligations.

- Lastly, the Notice should advise putative class members to preserve documents that may relate to their employment with NutriSystem, which is particularly important given the allegation that the Company failed to keep accurate records.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully submitted,

Dated: August 11, 2008

*/s/ Katherine E. Kenny*
Sarah E. Bouchard (PA I.D. #77088)
Jonathan S. Krause (PA I.D. # 93817)
Katherine E. Kenny (PA I.D. # 206993)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5077/5510/5256

Attorneys for Defendant
NutriSystem, Inc.