IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADRIAN E. PARKER          :          CIVIL ACTION
                          :
        v.                :
                          :
NUTRISYSTEM, INC.         :          NO. 08-1508


MEMORANDUM

Bartle, C.J.                                   July 30, 2009

        In this collective action the named plaintiff Adrian E.
Parker has sued his former employer, NutriSystem, Inc.
("NutriSystem") for violations of the Fair Labor Standards Act
("FLSA"), 29 U.S.C. §§ 201, et seq., and the Pennsylvania Minium
Wage Act, 43 Pa. Cons. Stat. §§ 333.101 et seq., on behalf of
himself and others similarly situated.  To bring a collective
action under the FLSA, the named plaintiff must establish that
the members of proposed class are all similarly situated and each
member must consent in writing to participate in the lawsuit.  29
U.S.C. § 216(b).  The court conditionally granted Parker's motion
to proceed as a collective action on September 26, 2008, and
seventy-eight plaintiffs have opted in.  Plaintiffs, who were all
employed by NutriSystem since May 28, 2005 as sales associates,
seek to recover unpaid time and a half compensation for the hours
they worked in excess of forty hours per week.

        Before the court are cross motions for summary
judgment.  NutriSystem has moved for summary judgment against
Parker and the first four opt-in plaintiffs, Donald J. Wilson,

Frank L. Stephens, IV, Monica Thompson, and Senya Saunders.  It
has informed the court that it intends to move for summary
judgment against the other plaintiffs if the court resolves the
pending motion in its favor.  The plaintiffs have also moved for
summary judgment against NutriSystem.

I.

The following facts are undisputed.  NutriSystem is a
provider of a weight loss and weight management program based on
prepared prepackaged meals.  It markets and sells its products
directly to individual customers for their personal use.
NutriSystem's core product is a 28-day meal program.  Several
varieties of the meal plan are available depending on customers'
needs.  For instance in 2008 NutriSystem offered: a women's
regular 28-day meal plan for $342.36, or $293.72 under the "auto-
ship" method; a men's regular 28-day plan for $371.50, or $319.95
under the auto-ship method; a women's or men's silver 28-day plan
(for older customers) for $342.36, or $293.72 under the auto-ship
method; a women's or men's diabetic-friendly 28-day plan for
$342.36, or $293.72 under the auto-ship method; and a women's or
men's vegetarian 28-day plan for $342.36, or $293.72 under the
auto-ship method.  Under the "auto-ship" method of shipment a
customer signs up to receive automatic monthly shipments of food
and is charged by NutriSystem on a monthly basis.  Customers are
permitted to cancel the auto-ship plan after the first month.
Under the regular plans, the customer receives only a 28-day
shipment and then must affirmatively request additional shipments

before they are sent.  The prices change based on market
conditions.  NutriSystem also offers periodic discounts and
promotions to target certain customers.

Customers typically place their orders with NutriSystem
via the internet or telephone.  QVC, the home shopping television
network, also sells NutriSystem products direct to customers, but
those sales accounted for no more than 5% of NutriSystem's annual
revenue during the time period relevant to this collective
action.

NutriSystem operates a call center in Horsham,
Pennsylvania, where some 230 sales associates make telephone
calls to and receive telephone calls from potential customers
twenty-four hours a day.  A company policy prohibits sales
associates from remaining idle for more than five minutes while
awaiting an inbound call.  Before the five minute mark is
reached, associates must initiate an outbound sales call, for
example to people who filled out profiles on the company website
but failed to place an order or to customers who previously
placed orders but their credit cards were declined.  Generally,
NutriSystem experiences its highest volume of orders in the first
quarter of the year after the holiday season when consumers
experience "holiday remorse" and are most likely to initiate
diets.

NutriSystem sales associates are assigned to six
different work shifts:  7:00 a.m. to 3:30 p.m., 9:00 a.m. to 5:30
p.m., 11:00 a.m. to 7:30 p.m., 1:30 p.m. to 10:00 p.m., 3:30 p.m.

to 11:00 p.m., and 11:00 p.m. to 7:30 a.m. (the "overnight shift").  Before 2007, sales associates could request permission to work additional hours beyond their scheduled shifts.  Since January, 2007, sales associates, except those working the overnight shift, can work extra hours in a given week only if in the preceding week they exceeded the average "sales dollars per call," a figure the company calculates based on the revenue the sales associates generate and the calls they make each week. This ensures that only the best sales associates are permitted to work extra hours.

In March, 2005 NutriSystem implemented its current compensation scheme for sales associates.  Under the plan, each pay period they receive the larger of either their hourly pay or their flat rate payments per sale.  The hourly rate is $10 per hour for the first forty hours per week, and $15 per hour for overtime.  The flat rates per sale are $18 for each 28-day program sold on an incoming call during daytime hours, $25 for each 28-day program sold on an incoming call during evening or weekend hours, and $40 for each 28-day program sold on an outbound call or during the overnight shift.[1]

The majority of the sales associates each pay period are compensated based on these flat rates, not hourly rates.

---

1.  NutriSystem also has in place flat rate compensation plans for other products and services.  However, the parties agree that sales of the 28-day program account for more than 50% of the sales associates' earnings and therefore we need not consider the source of the other portion of their wages.  See 29 U.S.C. § 207(i).

When sales associates are paid the flat rates for the sales made they do not receive any overtime compensation.  That is, the flat rates do not increase when an associate works more than forty hours in one week.

Lead plaintiff Adrian Parker was a NutriSystem sales associate from November, 2005 until February, 2008 when he was terminated.  Parker's compensation was always comprised of flat rate payments because his flat rate earnings always exceeded what would have been his hourly earnings.  He worked 2080.25 hours in 2006 and earned $65,136, while in 2007 he worked 1913.75 hours and earned $68,381.

Donald Wilson, the first opt-in plaintiff, was employed as a sales associate for NutriSystem from December, 2005 until November, 2007 when he was terminated.  Like Parker, he was always paid his flat rate earnings.  In 2006 he worked 2405.5 hours and earned $80,769, and in 2007 his hours were at least 2027 hours with income of $73,824.[2]

NutriSystem employed Frank Stephens, the second opt-in plaintiff, as a sales associate from December, 2005 until September, 2008 when he was discharged.  Stephens was paid his flat rate earnings for all but three pay periods.  The most he earned in one year was $84,393.50 in 2006 when he was on the job

---

2.  The data regarding Wilson's hours for the first bi-weekly pay period of 2007 is unavailable.  We also note that Wilson was terminated in late November, 2007 and therefore did not work at NutriSystem for the full year.  The earnings reported here represent Wilson's pay for all pay periods that he worked in 2007.

for 2196.5 hours.  In fifteen of his pay periods in 2007 he worked more than 80 hours, often substantially more, and in the other eleven he worked less than 80 hours, often substantially less.  In 2007 the records show 1952.75 hours and $71,235 in compensation.  For the eight plus months that he spent at NutriSystem in 2008, he obtained $37,226 for his 1472 hours.

Monica Thompson, the third opt-in plaintiff worked as a NurtiSystem sales associate from November, 2005 until October, 2008 when she was terminated.  She was always paid her flat rate earnings.  He hours in 2006 were 1970.25 and she earned $58,998, while her hours in 2007 were 1674.25 and she earned $48,790.  In 2008 the record shows 1544.25 hours in nine and half months of work and compensation of $41,939.

Finally, NutriSystem employed Senya Saunders, the fourth opt-in plaintiff, as a sales associate from December, 2005 until November, 2007 when she was terminated for job abandonment.  In two biweekly pay periods she was paid the hourly wage.  For all other periods she received her flat rate earnings.  In 2006, she spent 1774 hours on the job and was paid $45,865,50.  In 2007 her hours were 1602 during the ten and a half months she worked, and she was paid $39,952.

The plaintiffs contend that they are owed time and a half compensation for the weeks that they worked more than forty hours and were paid under the flat-rate compensation plan.[3]

_____

3.  The plaintiffs explain the calculation for damages owed to
                                        (continued...)

II.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  After reviewing the evidence, the court draws all reasonable inferences in the light most favorable to the non-moving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  We may consider only evidence that would be admissible at trial.  Fed. R. Civ. P. 56(e); Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996).

III.

The FLSA requires that employers pay their employees one-and-one-half times their regular rate of pay for any hours worked in excess of forty hours per week.  29 U.S.C. § 207(a). Section 207(i) establishes an exception to the overtime requirements for employees working in retail or service establishments.  This "retail commission exception" provides:

---

3. (...continued)
them as follows.  For a given week an associate's total compensation is divided by the total number of hours he or she worked to obtain the "regular rate" of pay.  See 29 C.F.R. §§ 778.111, 778.500.  The regular rate is then multiplied by the number of hours the associate worked over forty.  Id.  This product is then divided in half to obtain the extra 50% in pay due for overtime hours.  Id.  NutriSystem disputes that the plaintiffs are owed any overtime pay, but it does not appear to contest this method of calculation.

> No employer shall be deemed to have violated
> subsection (a) of this section by employing
> any employee of a retail or service
> establishment for a workweek in excess of the
> applicable workweek specified therein, if (1)
> the regular rate of pay of such employee is
> in excess of one and one-half times the
> minimum hourly rate applicable to him under
> section 206 of this title, and (2) more than
> half his compensation for a representative
> period (not less than one month) represents
> commissions on goods or services.  In
> determining the proportion of compensation
> representing commissions, all earnings
> resulting from the application of a bona fide
> commission rate shall be deemed commissions
> on goods or services without regard to
> whether the computed commissions exceed the
> draw or guarantee.

29 U.S.C. § 207(i).

The burden is on the employer to demonstrate that it is eligible for the retail commission exception.  <u>Mitchell v. Ky. Fin. Co.</u>, 359 U.S. 290, 295-96 (1959).  We narrowly construe the exception against the employer.  <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960); <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008).

The parties agree that NutriSystem is a retail establishment and that its sales associates' regular rate of pay is more than one and one-half times the federal minimum wage. Their dispute centers on the limited issue whether NutriSystem's method of compensating its sales associates "represents commissions on goods or services," which the statute states are "all earnings resulting from the application of a bona fide commission rate."  29 U.S.C. § 207(i).

-8-

Unfortunately, the statute itself does not define "commission," and no court in the Third Circuit has weighed in on the question.  In fact, the case law on the meaning of "commission" under the retail commission exception is sparse.  We are aware of no decision that has considered whether compensating call center employees with flat rate payments qualifies as bona fide commissions under the retail commission exception.[4]

NutriSystem argues that a "commission" is a method of payment that "fluctuate[s] from period to period, ... [does] not strictly depend upon the number of hours worked, [and is] based upon facts such as the skill and efficiency of the individual and the level of activity within the establishment."  In contrast, plaintiffs submit that a commission is generally calculated as a percentage of a sale and that it must be "at least somewhat proportional to the charges passed on to customers."  They maintain that the NutriSystem sales associates are paid on a piecework basis.

The purpose of Congress in enacting the FLSA was "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"

---

4.  NutriSystem cites to one call center case, Barnett v. Wash. Mutual Bank, FA, No. C 03-00753 CRB, 2004 WL 1753400, at *2 (N.D. Cal. Aug. 5, 2004).  However, the issue in that case was whether the call center was a retail establishment, not whether the employees were paid pursuant to a bona fide commission plan.  Id.

<u>Barrentine v. Ark.-Best Freight Sys., Inc.</u>, 450 U.S. 728, 739
(1981) (quoting 29 U.S.C. § 202(a)).  It was designed "to ensure
that each employee covered by the Act would receive '[a] fair
day's pay for a fair day's work' and would be protected from 'the
evil of overwork as well as underpay.'" <u>Id.</u> (quoting 81 Cong.
Rec. 4983 (1937) (message of President Roosevelt)) (internal
quotations omitted).

   Judge Posner of the United States Court of Appeals for
the Seventh Circuit has reviewed the legislative history of the
overtime compensation provisions and found a threefold purpose
underlying them:  (1) to prevent workers who, perhaps out of
desperation, are willing to work abnormally long hours from
taking jobs away from workers who prefer shorter hours, including
union members; (2) to spread available work among a larger number
of workers and thereby reduce unemployment; and (3) to compensate
overtime workers for the increased risk of workplace accidents
they might face from exhaustion or overexertion.  <u>Mechmet v. Four
Seasons Hotels, Ltd.</u>, 825 F.2d 1173, 1175-76 (7th Cir. 1987).

   According to the Department of Labor, the purpose of
the retail commission exception to the overtime provisions was

> to relieve an employer from the obligation of
> paying overtime compensation to certain
> employees of a retail or service
> establishment paid wholly or in greater part
> on the basis of commissions. These employees
> are generally employed in so-called "big
> ticket" departments and those establishments
> or parts of establishments where commission
> methods of payment traditionally have been
> used, typically those dealing in furniture,
> bedding and home furnishings, floor covering,

-10-

draperies, major appliances, musical
instruments, radios and television, men's
clothing, women's ready to wear, shoes,
corsets, home insulation, and various home
custom orders.  There may be other segments
in retailing where the proportionate amount
of commission payments would be great enough
for employees employed in such segments to
come within the exemption.  Each such
situation will be examined, where exemption
is claimed, to make certain the employees
treated as exempt from overtime compensation
under section 7(i) are properly within the
statutory exclusion.

29 C.F.R. § 779.414.

Black's Law Dictionary defines a "commission" as "[a] fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction." Black's Law Dictionary 286-87 (8th ed. 1999).  Generally a commission applies to persons involved in sales, such as real estate agents or department store employees.  See, e.g., 29 C.F.R. § 779.414.  Courts have also found that certain service employees earned commissions, like banquet hall waiters who received a portion of an 18% service charge, or mechanics who were compensated based on predetermined "flag hours" per repair job rather than the actual hours they worked.  Yi v. Sterling Collision Ctrs., Inc., 480 F.3d 505, 508 (11th Cir. 2007); Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1257 (11th Cir. 2001); Mechmet, 825 F.2d at 1178.  However, in Wilks v. Pep Boys the court determined that automobile mechanics did not earn commissions because the flat rates they were paid showed no proportional relationship to the price charged to customers for

the various services performed.  No. 3:02-0837, 2006 WL 2821700, at *15 (M.D. Tenn. Sept. 26, 2006), aff'd 278 Fed. App'x 448 (6th Cir. 2008).

Workers who manufacture products are generally not viewed as earning commissions even if they are paid per piece. Rather, this type of pay per item produced is considered "piecework."  The term piecework is sometimes also applied to flat rate wages in non-manufacturing contexts.  See Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1380-81 (3d Cir. 1985). Piecework payment plans are not commissions under § 207(i) and are not exempt from the overtime requirements.  See 29 C.F.R. § 778.111.

The Department of Labor has several publications that shed light on the questions before us.  We defer to a federal agency's reasonable interpretation of a federal statute.  See Chevron U.S.A. Inc. V. Nat'l Res. Defense Council, Inc., 467 U.S. 837, 844-45 (1984).  Although the Department of Labor's regulations do not define commission, they specify what a bona fide commission is not:

> [I]f the formula for computing the
> commissions is such that the employee, in
> fact, always or almost always earns the same
> fixed amount of compensation for each
> workweek (as would be the case where the
> computed commissions seldom or never equal or
> exceed the amount of the draw or guarantee).
> Another example of a commission plan which
> would not be considered as bona fide is one
> in which the employee receives a regular
> payment constituting nearly his entire
> earnings which is expressed in terms of a
> percentage of the sales which the

establishment or department can always be
expected to make with only a slight addition
to his wages based upon a greatly reduced
percentage applied to the sales above the
expected quota.

29 C.F.R. § 779.416(c).  The regulations also prohibit employers

from engaging in an invalid scheme involving

setting an arbitrary low hourly rate upon
which overtime compensation at time and
one-half would be computed for all hours
worked in excess of the applicable maximum
hours standard; coupled with this arrangement
was a guarantee that if the employee's
straight time and overtime compensation,
based on this rate, fell short, in any week,
of the compensation that would be due on a
piece-rate basis of x cents per piece, the
employee would be paid on the piece-rate
basis instead.  The hourly rate was set so
low that it never (or seldom) was operative.
This scheme was found by the Supreme Court to
be violative of the overtime provisions of
the Act in the case of Walling v.
Youngerman-Reynolds Hardwood Co., 325 U.S.
427.  The regular rate of the employee
involved was found to be the quotient of
total piece-rate earnings paid in any week
divided by the total hours worked in such
week.

29 C.F.R. § 778.500(d).

A collection of Opinion Letters from the Wage and Hour

Division of the Department of Labor attempts to explain the

meaning of "commission" under the retail commission exception.

In one letter the Department opines that alarm system installers

who are compensated based on a percentage of the sales price of

the alarm systems they install are paid a commission but that

installers who are paid a flat fee per installation are not paid

-13-

a commission and do not fall within the scope of § 207(i).  Dep't of Labor Op. Ltr., 1996 WL 1031770 (Apr. 3, 1996).

In another letter, concerning health club instructional employees, such as personal trainers, aerobic instructors, and tennis professionals, the Department was unable to reach an opinion because the employees appeared to be compensated under more than one method.  Dep't of Labor Op. Ltr., 2005 WL 3308624 (Nov. 14, 2005).  The Department offered the employer the following guidelines:

> Flat fees "paid without regard to the value of the service performed do not represent 'commissions on goods or services' for purposes of Sec[tion] 7(i)."  Field Operations Handbook, 21h04(c) ... Rather, employees paid a flat fee "are considered to be compensated on a piece rate basis and not on the basis of commissions. Commissions, for purposes of Sec[tion] 7(i), usually denotes a percentage of the amount of monies paid out or received."  Id. (emphasis in original); Opinion Letter dated October 14, 1982 ... Moreover, instructional employees paid a flat fee per lesson or session taught appear likely to earn the same amount each week, contrary to the requirements of 29 C.F.R. § 779.416.

Id.

The Department relied on the same above-quoted passage from the Wage and Hour Field Operations Handbook in a third letter that concerned automobile detailers and painters.  See Dep't of Labor Op. Ltr., 2006 WL 4512957 (June 29, 2006).  The detailers and painters were paid according to how many vehicles they serviced each week.  Id.  Each vehicle was assigned a predetermined number of "flag hours" based on the employer's

-14-

expectation of how long the job would take to complete.  Id.
Each detailer or painter was assigned a "flag rate" of pay based
on his or her experience and expertise.  Id.  The detailers and
painters were paid by multiplying their flag rate by the flag
hours for each vehicle they serviced, regardless of how long it
actually took them to complete a job.  Id.  Under this system,
the employees were encouraged to work rapidly and efficiently,
and their pay varied from week to week.  In its letter, the
Department concluded that this payment arrangement was a
commission because "the amount of the payment appears to be
related to the value of the service performed."  Id.

        In Wilks v. Pep Boys, the case on which the plaintiffs
rely, Judge Trauger of the Middle District of Tennessee
considered at length whether § 207(i) requires a "commission" to
bear a proportional relationship to the price paid by customers.
2006 WL 2821700.  At issue in Wilks were the claims of flat rate
employees of The Pep Boys, a chain store that sells automotive
parts and accessories and performs automotive services and
repairs, that the company wrongfully failed to pay them time and
a half compensation.  Id. at *1.

        The court presented a thorough and thoughtful analysis
of the meaning of "commission" under § 207(i) and held that
"wages paid to flat-rate employees must be at least somewhat
proportional to the charges passed on to customers."  Id. at *15.
Because the defendant "put forth neither argument nor evidence in
support of the notion that employee compensation correlates with

-15-

overall customer price," the court concluded that no proportional relationship existed.  Id. at *17.  Wilks is thus distinguishable from the case before us in which NutriSystem has both argued and offered evidence of proportionality.

NutriSystem primarily relies on Yi v. Sterling Collision Centers, Inc., 480 F.3d 505 (11th Cir. 2007) to support its view that a commission is something that "fluctuate[s] from period to period and [does] not strictly depend upon the number of hours worked, based upon factors such as the skill and efficiency of the individual and the level of activity within the establishment."  Yi involved automobile repair technicians who were compensated according to a system similar to the flag hours described above in the Opinion Letter.  Id. at 509.  The faster the technicians worked, the more they earned because their pay was not tied to the number of hours they worked but to the number of jobs they completed.  Id.  Although the technicians were not making sales, the court did not view them as pieceworkers because unlike a garment worker, the technicians' opportunities for work depended on customers' decisions and not only on their own efficiency.  Id. at 510.

Writing for the court, Judge Posner reasoned that the method of compensation in Yi was not meaningfully different from that of a real estate agent, who clearly receives a commission. Id.  He explained that the rationale for the retail commission exception is to accommodate jobs where employees are compensated per sale yet the opportunities to consummate those sales vary

-16-

from week to week.  Id. at 508.  Thus, over the course of a year, commission employees' earnings average out to be equivalent to that of regular hourly employees.  Id.  The commission employees should not be paid overtime for the weeks when they work extra hours because they are doing so to make up for the slower periods.  Id.

Judge Posner placed great emphasis on the fact that denying the technicians overtime payments comported with the rationales underlying the retail commission exception.  First, he observed that the two named plaintiffs earned more than $60,000 per year and were thus not the desperate employees contemplated by the overtime provisions.  Id. at 510.  Second, he pointed out that because skilled workers such as these plaintiffs were scarce, forcing their employer to pay them overtime was unlikely to induce the hiring of additional mechanics.  Id.  Third, there was no evidence that the plaintiffs worked more than 2000 hours a year, which averages out to fifty forty-hour work weeks.  Id.

The flat rate payments made to the NutriSystem sales associates have the hallmarks and functionality of a bona fide commission plan.  First, no court as far as we know has ever held that a flat rate payment can never be a commission.  Rather, the courts merely state that a commission is usually or generally based on a percentage of the sales prices.  However, we agree with the court in Wilks that some amount of proportionality must exist between flat rates earned by workers and the prices paid by customers for the products sold.  See, e.g., Yi, 480 F.3d at

-17-

508; Dep't of Labor Op. Ltr., 2006 WL 4512957 (June 29, 2006);
Black's Law Dictionary 286-87.  To illustrate with an extreme
example, proportionality would not exist if an employee were paid
the same dollar amount for selling a $10 ring as a $1,000,000
ring.

We need not decide the outer limits of the degree of
proportionality required as we are satisfied that, unlike the
situation in Wilks, NutriSystem's payments to its sales
associates are sufficiently proportional to the cost of the
products it sells to qualify as commissions.  The NutriSystem 28-
day product varies only slightly in price.  Four of the five
NutriSystem 28-day meal plans cost $342.36.  The men's regular
28-day plan, which costs $371.50, is slightly more expensive
because of the quantity of food.  For all five products,
customers can receive a discount of approximately $50 if they
agree to the auto-ship plan.  Thus, NutriSystem sales associates
are not promoting a wide variety of products with disparate price
tags and upgrades, such as fifty pounds of top sirloin steaks
versus five pounds of cereal.

While a new customer may ultimately purchase
NutriSystem meals for more than one month, customers buy only one
28-day meal plan at a time when they place an order with a sales
associate.  This is true even if the customer agrees to
participate in the auto-ship plan.  No one knows how long, that
is, for how many months, a customer will continue to buy the
products offered by NutriSystem, and there is no evidence

regarding the percentage of customers who remain on the auto-ship payment plan beyond the first four weeks. According to NutriSystem, customers rarely buy the food plans for more than three months and the plaintiffs' hypothetical situation of a $3000 purchase does not comport with reality.

Additionally, the fact that NutriSystem has in place three different commission rates based on the time of the day or week that the sale was consummated does not undermine our analysis. In our view, NutriSystem, consistent with a bona fide commission plan, may reasonably choose to offer greater commissions for sales completed in the evenings and on weekends in order to remain open twenty-four hours and day, seven days a week, and to encourage employees to work the less desirable shifts.

Second, in addition to proportionality, we conclude that the fact that the plaintiffs are working in sales is a strong indicator that their wages are commissions. Garment workers and alarm system installers who are paid flat rates are not earning commissions, even though their wage structure provides an incentive to work quickly, because there is no component of their earnings that depends on the preferences of a customer. How much they earn is entirely in their control. In contrast, the compensation of real estate agents and department store sales clerks, and the call center associates here, depends in large part on the preferences of customers and on the ability

of the employees to persuade those customers to buy what is being offered for sale.

In general, the NutriSytem sales associates' earnings increase when they work more hours because they can close more sales.  Their pay, however, is not tied to the number of hours they work.  As noted above, their compensation depends on customer preferences and decisions, as well as their ability to persuade them to purchase particular programs, and thus fluctuates from period to period.  It is not solely the efforts of the workers to produce a product or complete an assignment without regard to the sale that determines how much money they make.  This is evident from the fluctuations that have occurred with respect to each plaintiff's pay over a period of time as well as the contrast in earnings between and among the plaintiffs within a single pay period.  For example, in the pay period ending March 2, 2007 Parker's earnings amounted to the equivalent of $28.82 per hour.  In that same pay period, Saunders earned the equivalent of $36.77 per hour and for Stephens it was $56.86 per hour.  Each plaintiff's own productivity also varied from week to week.  For instance, in the biweekly pay period ending March 11, 2007, Parker worked 104 hours and his compensation averaged out to $37.77 per hour.  The next pay period he worked only 73.25 hours for an effective hourly wage of $42.99 per hour.

We have considered the purposes of the FLSA overtime provisions and conclude that the flat rate payment plan NutriSystem uses to pay its sales associates does not violate the

public policy underlying the statute.  See Mechmet, 825 F.2d at
1175-76.  In addition, the purpose of the retail exception to the
FLSA overtime provisions supports our judgment that the flat rate
payments in issue are commissions.  The retail commission
exception enables employers to use a non-hourly compensation
system to motivate employees to make more sales and increase
company revenue.  As discussed above, commission plans are
typical in industries where the amount of work varies over time,
for instance because it is cyclical in nature or depends upon the
whims of customers.  NutriSystem's line of work has these
features.  Business is busiest at the beginning of the calendar
year, following the holiday season, and its earnings depend on
customers' willingness to make purchases.  It is thus natural for
it to permit, or encourage, its sales associates to work longer
hours to compensate for the periods when they make fewer sales.

 Accordingly, we conclude that NutriSystem's method of
compensating its sales associates is a bona fide commission plan
under the FLSA.  See 29 U.S.C. § 207(i).

IV.

 In addition to their federal FLSA claims, the
plaintiffs seek damages under the Pennsylvania Minimum Wage Act
("PMWA"), 43 Pa. Cons. Stat. §§ 333.101 et seq.  The overtime
provisions of the PMWA offer employees similar protections to
what they enjoy under the FLSA.  The PMWA provides:

> Employes shall be paid for overtime not less
> than one and one-half times the employe's
> regular rate as prescribed in regulations

-21-

> promulgated by the secretary: ... provided
> further, That the secretary shall promulgate
> regulations with respect to overtime subject
> to the limitations that no pay for overtime
> in addition to the regular rate shall be
> required except for hours in excess of forty
> hours in a workweek.

43 Pa. Cons. Stat. § 333.104(c).  NutriSystem contends that a

Pennsylvania Department of Labor and Industry regulation, which

contains language nearly identical to that of the retail

commission exception in the FLSA, exempts it from the overtime

requirements of the PMWA:

> No employer may be deemed to have violated
> these §§ 231.41–231.43 by employing an
> employee of a retail or service establishment
> for a workweek in excess of 40 hours if:
>
> > (1) The regular rate of pay of the
> > employee is in excess of 1 1/2
> > times the minimum hourly rate
> > applicable.
> >
> > (2) More than half of the employee's
> > compensation for a representative
> > period, not less than 1 month,
> > represents commissions on goods or
> > services. In determining the proportion
> > of compensation representing
> > commissions, all earnings resulting from
> > the application of a bona fide
> > commission rate shall be deemed
> > commissions on goods or services without
> > regard to whether the computed
> > commissions exceed the draw or
> > guarantee.

34 Pa. Code § 231.43(f).  Plaintiffs respond that the regulation

is invalid because it extends beyond the scope of the secretary's

authority.  They concede, however, that "if 34 Pa. Code

§ 231.43(f) were valid, it would be appropriate to interpret its

-22-

language in a manner consistently with the identical language of
FLSA section 7(i)."

The scope of the secretary's authority to promulgate
rules and regulations relating to the PMWA is set forth in 43 Pa.
Cons. Stat. § 333.109.  It states:

> The secretary shall enforce this act.  The
> secretary shall make and, from time to time,
> revise regulations, with the assistance of
> the board, when requested by the secretary,
> which shall be deemed appropriate to carry
> out the purposes of this act and to safeguard
> the minimum wage rates thereby established.
> Such regulations may include, but are not
> limited to, regulations defining and
> governing bona fide executive,
> administrative, or professional employes and
> outside salespersons, learners and
> apprentices, their number, proportion, length
> of learning period, and other working
> conditions; handicapped workers; part-time
> pay; overtime standards; bonuses; allowances
> for board, lodging, apparel, or other
> facilities or services customarily furnished
> by employers to employes; allowances for
> gratuities; or allowances for such other
> special conditions or circumstances which may
> be incidental to a particular
> employer-employe relationship.

43 Pa. Cons. Stat. § 333.109 (emphasis added).  We are not
persuaded by plaintiffs' argument that the secretary may not
craft regulations with respect to "retail or service" employees
because they are not expressly listed in the statute.  Before
listing possible topics for regulation, the statute says in no
uncertain terms:  "[s]uch regulations may include, but are not
limited to."  The maxim inclusio unius est exclusio alterius is
therefore misapplied and the retail commission exception found in
34 Pa. Code § 231.43(f) is valid.

V.

In conclusion, we will grant the motion of NutriSystem for summary judgment against Adrian E. Parker, Donald J. Wilson, Frank L. Stephens, IV, Monica Thompson, and Senya Saunders, and we will deny the motion of the plaintiffs for summary judgment.